# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:22-CV-00304-DSC

| | |
|---|---|
| MINNA-MARIE BRANDT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **MEMORANDUM AND ORDER** |
| ) | |
| DAMIAN CARACCIOLO, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on Petitioner's "Verified Petition for Return of Children under the Hague Convention" (document # 1) as well as the parties' briefs and exhibits.

On October 17, 2022, the parties consented to Magistrate Judge jurisdiction pursuant to 29 U.S.C. § 636 (c). On November 10, 2022, the Court held an evidentiary hearing in this matter. The parties filed post trial briefs on November 28, 2022.

Having fully considered the record, the authorities and the parties' arguments, the Court denies the Petition as discussed below.

## FACTUAL BACKGROUND AND FINDINGS

Petitioner and Respondent are the parents of two minor children who are the subject of this action. The parties have never been married. Petitioner is a citizen and resident of Sweden. Respondent is a United States citizen and resident of North Carolina. The parties met in 2015 and began a relationship. They cohabitated for about six months. In 2016, Respondent ceased living with Petitioner. On October 1, 2016, the minor child S.C. was born in Orebro, Sweden. On September 11, 2019, the minor child J.C. was born in Orebro, Sweden. Prior to the end of 2020,

Petitioner was the children's primary custodian. There was no court order or other formal determination of custody in effect.

On December 30, 2020, the Orebro Social Welfare Committee began a Social Care investigation into the safety of Petitioner's home and the children's welfare. The investigation continued through at least March 2022.

The Social Welfare Committee's report is significant. Exhibit 2. It substantiates Respondent's testimony that when he brought the children to the United States, he did so pursuant to the parties' agreement with Social Welfare that "the best thing for the children would be for [Respondent] to go to the United States with them" and that if the parties had not so agreed, foster care would have been considered. The report also states that "in retrospect, [Petitioner] believes that they did not agree on how long [Respondent] would be in the U[nited] S[tates] with the children." Although there were risk factors as to both parents, including "mental and physical illness [of Petitioner] and to some extent [Respondent] … [and] domestic violence between [them]," the primary concern was "[Petitioner's] drug abuse and mental health." The report concluded that "in our investigation, no information has come to light that indicates any concern about [Respondent's] parent[ing] or suitability as guardian…. We judge that he is suitable as sole guardian of the children." The report recommends that Petitioner have weekly video calls with the children. The report also stated that if Respondent took the children to Sweden, visits with Petitioner would appropriate, as well as if she traveled to the United States to see them.

On April 16, 2021, Respondent traveled to the United States with the children where they have remained. They brought the majority of the children's clothing and toys. Petitioner gave Respondent the children's birth certificates and passports. The children speak English and attend school here.

Sometime after the children traveled to the United States, Petitioner initiated a child custody action in Sweden. On July 6, 2021, the Swedish court entered an interim order awarding the parties joint custody of the children.

On March 31, 2022, and relying on the report discussed above, the Swedish court awarded Respondent sole custody of the children and granted Petitioner weekly video visits. Exhibit 4. In a factual finding, the Order states that the children were removed to the United States pursuant to an agreement between the parties that they go for three months and then be returned. Petitioner's "Post Hearing Brief …" at 11 (document #22). Petitioner appealed that order, which was denied by the Swedish court. Petitioner moved the Swedish court to hold Respondent in contempt, which was also denied.

On July 6, 2022, Petitioner filed the instant Petition. She contends that the parties only agreed to the children having a three month stay in the United States.

## **DISCUSSION**

The Hague Convention aims to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Hague Convention, Art. 1. Accordingly, the Convention secures the prompt return of children wrongfully removed to or retained in another Contracting State. Id. The United States has signed the Convention as a Contracting State and subsequently codified its obligations in the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001, et seq.

The Court is not empowered to adjudicate the underlying custody dispute between the parties. Rather, the issue is "whether the child has been wrongfully removed or retained from his or her habitual residence." Salguero v. Argueta, 256 F. Supp. 3d 630, 635 (E.D.N.C. 2017). "The

Hague Convention seeks to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as secure protection for rights of access." Sundberg v. Bailey, 293 F. Supp. 3d 548, 554 (W.D.N.C. 2017), aff'd, 765 F. App'x 910 (4th Cir. 2019) (citation omitted). "The primary purpose of the Hague Convention is 'to preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court.'" Miller v Miller, 240 F.3d 392, 398 (4th Cir. 2001) (quoting Friedrich v. Friedrich, 983 F.2d 1396, 1400 (6th Cir.1993) ("Friedrich I").

To secure the return of a child under the treaty, "a petitioner must show by a preponderance of the evidence that the child was 'wrongfully removed or retained' within the meaning of the Convention." Sundberg, 293 F. Supp. 3d at 554 (citing 22 U.S.C. § 9003(e)(1)(A) and Convention, Art. 3). At issue here is whether Respondent has wrongfully retained the children in the United States. The relevant time period is April through July of 2021, when Respondent removed the children to the United States and retained them despite Petitioner's request that they be returned.

To establish a prima facie case of wrongful retention, Petitioner must show by a preponderance of the evidence that:

> (1) the children were 'habitually resident' in the petitioner's country of residence at the time of removal [or retention];
> (2) the removal [or retention] was in breach of the petitioner's custody rights under the law of [her] home state; and
> (3) that the petitioner had been exercising those rights at the time of removal [or retention].

Sundberg, 293 F. Supp. 3d at 554. Respondent does not contest that Petitioner has met the third element.

The Hague Convention does not define "habitual residence." The Fourth Circuit has adopted a case-by-case analysis that takes into consideration "whether the parents share an intent

to make a particular country the child's home and second whether enough time has passed for the child to acclimatize to the residence." Smedley v. Smedley, 772 F.3d 184, 186 (4th Cir. 2014) (internal citation omitted).

Petitioner contends that at the time the children left Sweden she "intended to remain in Sweden with the children permanently and was under the belief that [Respondent] shared these intentions." Petitioner's "Brief" at 8 (document #15). She testified that the fact the children had always returned to Sweden following earlier visits here supports that conclusion.

As to the second element, Petitioner must prove that the retention was wrongful because her custody rights were breached. 22 U.S.C. §9003(e)(1)(A). "Rights of custody" as defined by the Hague Convention arise by (1) operation of law; (2) judicial administrative decision; or (3) an agreement having legal effect under the law of the state of the habitual residence of the child prior to the abduction or wrongful retention. Hague Convention, Art. III. The Court may take judicial notice of the law of the habitual residence in order to determine whether the removal breached Petitioner's custodial rights. Hague Convention, Art. IVX.

Applying those legal principles to the evidence in this case, Petitioner has failed to establish a prima face case of wrongful retention. At the outset, the facts here are atypical for a child abduction proceeding. Miller, 240 F.3d at 398 ("The primary purpose of the Hague Convention is 'to preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court.'") (quoting Friedrich, 983 F.2d at 1400.) Respondent had no need to remove the children from Sweden and seek a more sympathetic court in order to obtain custody. Initially, through the involvement of Swedish Social Welfare, he became the primary physical custodian of the children. The July 2021 temporary custody order contains no requirement that Respondent return the children to Sweden. In March 2022, the Swedish court awarded sole

custody to Respondent. Petitioner's efforts to appeal the orders or have Respondent held in contempt for violating them were denied. In short, far from the typical child abduction case, the Swedish authorities were satisfied with the children remaining here.

Moreover, if the children were returned to Sweden, they would remain in Respondent's custody or possibly be placed in foster care. Recognizing that fact, Petitioner testified that if the children are returned to Sweden she intends to file a petition to re-open the custody proceeding. There is nothing in the record indicating that the children must be present in Sweden for Petitioner to re-open the custody case.

Petitioner argues that the permanent custody order is irrelevant to the determination of whether Respondent's decision to retain the children was wrongful. Petitioner's "Brief" at 8 (document #15) and "Post Hearing Brief …" at 15-17 (document #22) (citing White v. White, 718 F.3d 300, 307-08 (4th Cir. 2013) (holding that a custody decision issued two years after the child's removal had no bearing on the issue of whether the removal was a breach of the petitioner's custody rights)).

Petitioner's argument misses the point. The March 2022 custody order is not dispositive as a matter of law on the issue of wrongful retention. White, 718 F.3d at 307-08. But the Court may consider that order as evidence. Indeed, each party argues that the Court should consider certain factual findings in that order. Petitioner's "Post Hearing Brief …" at 11 (document #22) and "Respondent's Final Brief" at 3 (document #23). The custody orders and the Social Welfare Committee's report are compelling evidence that both Respondent's initial removal of the children and subsequent retention of them here were proper. Those documents contemplate that the children would remain in the United States.

In contrast, the evidence concerning the parties' initial agreement that the children would visit in the United States for three months and return is conflicting. Even Petitioner testified that the agreement did not include a definite return date.

For those reasons, Petitioner has failed to establish that Respondent wrongfully retained the children. She has failed to state a prima facie case and her Petition must be <u>denied</u>.

## **ORDER**

1. Petitioner's "Verified Petition for Return of Children under the Hague Convention" (document # 1) is **DENIED**.

2. The parties shall pay their own costs.

3. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED**.

Signed: November 29, 2022

David S. Cayer
United States Magistrate Judge